**POWERLOCK FLOORS, INC., Plaintiff,**

v.

**ROBBINS FLOORING COMPANY, Defendant.**

Civ. A. No. 3262.

United States District Court
D. Delaware.

Feb. 26, 1968.

Roger Sanders, of Prickett, Ward, Burt & Sanders, Wilmington, Del., for plaintiff; Zachary T. Wobensmith, 2nd, Philadelphia, Pa., of counsel.

Henry M. Canby, of Richards, Layton & Finger, Wilmington, Del., for defendant; George J. Harding, 3rd, Busser, Smith & Harding, Philadelphia, Pa., Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, Cooper Turner, Memphis, Tenn., of counsel.

## OPINION

STEEL, District Judge.

Plaintiff has sued defendant for the infringement of U. S. Letters Patent No. 3,267,630 ("630") issued to plaintiff's president, Omholt, on August 23, 1966 and U. S. Letters Patent No. 3,271,916 ("916") issued to Omholt on September 13, 1966. Defendant has moved for summary judgment upon the ground that both patents are invalid.

The motion, in so far as it relates to the 630 patent, is based upon the defense of obviousness under 35 U.S.C. § 103 (1952).[1] As to the 916 patent, the motion is based upon an alleged failure of the specifications to meet the demands of 35 U.S.C. § 112 (1952).[2] If defend-

---

1. Section 103 provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

2. Section 112 provides in relevant part:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

ant is right in either particular the patent is invalid. 35 U.S.C. § 282 (1952).

By its terms the motion is supported by U. S. Letters Patent No. 1,898,364 ("364") issued to Gynn on February 21, 1933, U. S. Letters Patent No. 3,031,725 ("725") issued to R. E. Omholt (the patentee of the patents in suit) issued on May 1, 1962,[3] the deposition of R. E. Omholt, and a certified copy of the file wrapper pertaining to patent 916. The motion is resisted by an affidavit filed by Omholt. In addition, at the argument several exhibits were introduced and certain admissions made and agreements entered into which it was stipulated might be considered in determining the motion.

The parties agree that claim 1 of each of the patents sued upon may be considered to be typical of all its claims, and that a decision on claim 1 will control the disposition of the other claims.

### U. S. Letters Patent No. 3,267,630

█ Claim 1 relates to a flooring system which is an improvement on that disclosed in the earlier 725 patent issued to Omholt. The specifications state that the 630 patent flooring construction minimizes the shrinkage of the floorboards by preventing the passage of air between them by means of the use of tongue and groove boards, reduces installation costs, and makes possible installation by less skilled workmen. (column 1, lines 19–35).

Read in the light of the drawings and specifications, claim 1 discloses that the alleged invention consists of the following: ·

A plurality of spaced parallel channels each having a pair of spaced rims with upper face portions. The channels are secured to a supporting sub-floor consisting of wood, concrete or other material.[4] A series of "draw-down" clips are placed in a gripping engagement with each channel. A plurality of parallel floorboards are transversely disposed with respect to the upper portion of each channel and are in engagement with the face portion thereof. The floorboards are tongue and grooved, the tongue of each board fitting into the groove of the adjacent board to restrain independent vertical movement of one board from the other and for preventing warpage. Each floorboard has along at least one side margin a longitudinally extending side marginal groove spaced below the tongues and grooves. The draw-down clips are disposed at the intersection of each of the floorboards with each of the channels. Each drawn clip includes a gripping finger which extends into and is in engagement with one of the marginal grooves, thereby urging the floorboards downwardly into engagement with the rims of the channel.[5]

The defendant asserts that the differences between the subject matter sought to be patented in the 630 patent and the prior art are such that the subject matter of the 630 patent as a whole would have been obvious at the time of its invention to a person having ordinary skill in the art to which its subject matter pertains. Hence, it argues that under 35 U.S.C. § 103 (1952) the 630 patent is invalid. The prior art relied upon by defendant is the earlier Omholt patent 725 and the Gynn patent 364.

The principal object of the Omholt 725 patent was to provide an improved wood flooring system which is adequately held in position, at a cost considerably less, and having a greater wearing surface, than systems then available. (column 1, lines 36–41).

The only relevant points of difference between the Omholt 725 and 630 patents

---

3. U.S. Letters Patent No. 2,129,976 issued to L. F. Urbain on September 13, 1938 was likewise cited as a patent relied upon to support the motion. At the argument defendant agreed that this reference could be disregarded in resolving the motion.

4. The method by which they are secured does not appear to be important.

5. An examination of the drawings and physical exhibits is of substantial aid in making the specifications and claim more meaningful.

is that 630 uses tongue and groove floorboards, whereas 725 utilizes square-edged boards with a longitudinal slot or groove on each side thereof into which "holding inserts" (splines) are fitted. The purpose of the splines is to prevent movement of the floorboards in a verticle direction. This, together with prevention of warpage, is the precise purpose of the tongue and groove boards stated in the 630 patent.

Omholt testified on deposition that there was no difference between the channel members and "holddown clips"[6] which both the 725 and 630 patents disclose. The utilization of tongue and grooved flooring in 630 instead of square-edged flooring with splines in 725 is a substitution of the most obvious kind and is clearly shown by the Gynn 364 patent.[7] Gynn's 364 patent provides for a flooring construction in which tongue and grooved floorboards are attached to a sub-base by means of clips which interlock with the floorboards, and thus hold the floorboards in place.

The only problems which Omholt was endeavoring to solve by his 630 patent, according to his deposition, were, (1) to provide a person who was assembling a floor an option to use a tongue and groove assembly rather than a spline assembly, and (2) to provide an assembly which could be used for wall construction where asphalt might be poured. In the latter case, Omholt said, any leakage problem would be corrected by the tongue and groove assembly. On the face of it, the solution of neither of these problems through the use of a tongue and groove assembly required any inventive ingenuity beyond the capability of anyone skilled in the flooring art having familiarity with Omholt 725 and Gynn 364.

Plaintiff argues that there are relevant issues of fact disclosed by the record that can not be resolved on a motion for summary judgment. This contention is based primarily upon the Omholt affidavit. In paragraph 3 Omholt categorically denies that the prior art was such at the time of his 630 patent that its subject matter as a whole would have been obvious to a person having ordinary skill in the art to which the 630 subject matter pertained. Fed.R.Civ.P. 56(e) discusses the form which an affidavit must take when used to resist a summary judgment motion. It states:

"[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Here, paragraph 35 of the counterclaim filed by defendant for a declaratory judgment invalidating the 630 patent incorporates by reference the allegations of paragraphs 8 through 19 of its answer. Paragraph 13 of the answer alleges invalidity because of obviousness. Plaintiff's "Answer to Counter-claims" denies the allegations of paragraph 35 of the counter-claim, and thus paragraph 13 of the answer. This is the effect of paragraph 3 of Omholt's affidavit. It is the equivalent of a pleading denial, and therefore is precisely what Fed.R.Civ.P. 56(e) states a party may not rely upon to resist a motion for summary judgment. No importance may be attached to paragraph 3 of the Omholt affidavit.

Omholt asserts in paragraph 4 of his affidavit that the structure of the Gynn 364 patent differs in substantial respect from the structure of the 630 patent, involves different modes of installation, and a different holding of the boards in relation to the foundation, and thereafter details these differences. These differences may be accepted as true for purposes of the summary judgment motion,

---

6. The term "draw-down" clips is used in the 630 patent.

7. Whereas Omholt's earlier patent 725 was cited against 630 in the Patent Office, the Gynn 364 patent was not. The presumption of validity of 630 because of its issuance is thereby weakened.

but are not material to the obviousness issue. The same thing is true of Omholt's statement in paragraph 5 of his affidavit concerning the differences between 630 and his prior patent 725.

Paragraph 6 of the affidavit relates to the Urbain patent upon which the defendant in brief and in argument has disavowed reliance. It, therefore, requires no consideration.

The allegations of paragraphs 7 and 8 of the affidavit are based upon information and belief, and not upon the personal knowledge of Omholt. They are of no avail to plaintiff under Fed.R.Civ.P. 56(e). In addition, the assertion by Omholt in paragraphs 7 and 8 that additional facts might be developed by discovery not yet pursued, which would bring to light evidence not yet presented, is without merit. Plaintiff made no effort to secure additional time to produce other evidence by way of deposition, or otherwise, prior to the time when the motion was heard. The rule is clear that one who opposes a motion for summary judgment must bring forward all of his defensive ammunition in resisting the motion. Engl v. Aetna Life Ins. Co., 139 F.2d 469, 473 (2d Cir. 1943). Evidence then in existence cannot be withheld for later use.

■ Plaintiff also argues that expert testimony is required to determine what level of skill is needed to make an invention obvious to one skilled in the art. It may be conceded that this is true in many if not most patent cases. In the case at bar it is not. The combination which plaintiff asserts is the basis of the 630 patent is so simple and its relationship to the prior art so clear that expert testimony is not required. See Allen-Bradley Co. v. Air Reduction Co., 273 F.Supp. 930, 935 (W.D.Pa.1967), and Ronel Corporation v. Anchor Lock of Florida, Inc., 325 F.2d 889 (5th Cir. 1963). Plaintiff had ample opportunity to file an affidavit or deposition of an expert asserting that to one ordinarily skilled in the flooring art the patent would not be obvious in the light of the prior art, and explaining why this is so.

No such evidence was presented. In its absence, and upon the present record, no issue of material fact exists on the questions of obviousness.

■ While a judge should exercise unusual caution in granting summary judgment against the validity of a patent, there are cases where it would be a waste of time and effort to deny such a judgment. See Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 233 F.2d 9 (2d Cir. 1956), cited with approval in Ronel Corporation v. Anchor Lock of Florida, Inc., supra. This is such a case. Neither Tri Wall Containers v. Continental Can Co., 147 U.S.P.O. 41 (S.D.N.Y.1965), nor Borden Co. v. Clearfield Cheese Co., 369 F.2d 96 (3rd Cir. 1966), relied upon by plaintiff, is at variance with this conclusion.

The motion for summary judgment directed to the 630 patent will be granted.

### U.S. Letters Patent No. 3,271,916

■ The 916 patent is entitled "Uniformly Resilient Flooring Systems". Its invention is said to relate to an improvement in floors of the same general type as that covered by the 725 patent. It states that the upper surface of the floor in the 725 patent deflects more when a load is applied at the mid-channel point than when the same load is applied directly over the channels, and that its purpose is to correct this condition. More specifically, 916 states that a principal object is to provide a flooring system having enhanced impact response with stability, and that a further object is to provide a flooring system having differentially compressive supporting materials beneath the channels and beneath the floorboards between the channels so that a desired balance between shock absorption and resiliency is attained.

The invention of the 916 patent contemplated (1) the interposition between the lower faces of the channels and their supporting base of a cushioning runner of predetermined shock absorbency, and (2) the insertion in the voids between the channels and between the under faces of the floorboards and upper face

of the supporting base of a fibreboard of predetermined shock absorbency and rebound characteristics and of equal or of lesser total compressibility than the cushioning runner, and having a thickness in excess of the space between the supporting base and the lower faces of the floorboards.

Defendant claims that the 916 patent does not meet the requirement of 35 U.S.C. § 112 (1952) principally for two reasons: first, no one skilled in the flooring art or in an art with which it is most nearly connected could make and use the alleged invention because the specifications do not describe it, and the manner and process of making and using it, with sufficient clarity; and second, the specification fails to set forth the best mode contemplated by the inventor for carrying out his invention since the mode which he does disclose is inoperable.

■ In support of the first point, defendant claims that a number of the statements in the specifications are either ambiguous or inconsistent with each other, and that they fail to define with understandable precision the relationship which must exist between the compressive and resilient characteristics of the fibreboard placed between the channels and those characteristics of the cushioning runner under the channels. Defendant further points out that no tests are given in the patent for determining in any definitive way such relationship. It asserts that the jumping test[8] which Omholt stated in his deposition is followed for determining the relationship, is entirely subjective. It argues that the test depends upon the reaction not only of each jumper, but also upon other variables such as, for example, the purpose for which the floor is to be used (industrial or gymnastic), the thickness of the flooring, and the height of the channels. In these respects defendant argues that the specifications are so vague and uncertain that no one can tell, except by

independent experiments, how to construct the patented flooring. Defendant claims that all the patent does is to put forth a problem for experiment to solve. If this were true, the patent, under the authorities, would be void. National Theatre Supply Co. v. Da-Lite Screen Co., 86 F.2d 454 (7th Cir. 1936).

On the other hand, plaintiff argues that the invention was not intended to be limited to a flooring system used only in a gymnasium, or only in an industrial plant, or for some other single purpose. Nor, it asserts, were the specifications intended to relate only to a floor of a single dimensional thickness and width, or to a floor having only one spatial span between channels, or for use with channels of a single dimension. Because of the variety of the environments in which the invention may be used, plaintiff contends that the terms of the specifications are permissively broad, and quite properly give to a person skilled in the art room for flexibility in design which a more precise specification would foreclose.

This conflict in point of view cannot be resolved without the aid of expert testimony. Only an expert can know whether, despite the generalities of the specifications complained of by defendant, he would be able to practice the patent's teaching and successfully construct a floor under it. Here the issue posed is not a simple one such as that of obviousness involved in the 630 patent where the testimony of an expert was not needed.

The second attack upon the 916 patent rests upon that portion of 35 U.S.C. § 112 (1952) which makes it mandatory for the inventor to set forth in his specifications,

"[T]he best mode contemplated by the inventor of carrying out his invention."

Defendant contends that in Omholt's attempt to meet this requirement he

8. The jumping test is one in which the expert determines whether or not the proper relationship exists by an empirical test, or "feel" reaction, simulating actual conditions by jumping. In paragraph 17 of his affidavit, Omholt states that the jumping test is the only test known, used and recognized in the industry.

recommended the use of butyl rubber which could not accomplish his objective. Column 3, lines 15 to 20, of the patent states:

"Each of the channels 11 has interposed between the lower face of its web 12 and the membrane 40 on supporting base 10, a cushioning runner 41 and preferably of substantially rectangular cross section and of shock absorbing butyl rubber, or like material with the desired characteristics of resiliency and recovery under load."

According to Omholt's deposition, the material which he ordered for use in the flooring assembly was an SBR compound known as styrene butadiene rubber. When his patent application was filed it was Omholt's understanding that buta in the butadiene connoted butyl; hence he referred to butyl in his patent. Only later he learned that this was not the case. (Dep. 436–437).

Defendant attempts to make much of Omholt's deposition testimony that butyl rubber is not "lively to the bounce", "cannot be mixed as an additive", and "wouldn't be useful".

Despite these statements, Omholt asserts in paragraph 15 of his affidavit that butyl rubber could be employed in a functioning floor. Omholt does not explain the reason for this testimonial conflict. But conflict there is. In these circumstances the issue of the utility of butyl rubber cannot be resolved on the motion for summary judgment.

Furthermore, at an earlier stage of his deposition Omholt testified that he found butyl rubber satisfactory in carrying out his invention. (Dep. 352). Since he had used the SBR compound satisfactorily and at the time may have believed that it connoted butyl, this may possibly explain the inconsistency of this testimony. However, this is surmise, and the conflict in the deposition itself is an additional reason why summary judgment is inappropriate to dispose of the issue.

Beyond what has been said, the specifications call for "a cushioning runner" to be interposed between the bottom of the channel and the top of the supporting base. The specifications state that preferably this cushioning runner shall consist of, "shock absorbing butyl rubber, or like material with the desired characteristics of resiliency and recovery under load." The specifications disclose that butyl rubber was only an alternative to other materials which Omholt recommended.

Defendant argues that the "like material" clause, following as it does a specification of "butyl rubber", must mean a material as useless as defendant claims butyl rubber to be. This is hardly a reasonable construction. The paramount thought which the specifications express is that the runner under the channels be "cushioning", and that the material used should be "shock absorbing" with characteristics of "resiliency and recovery under load." Anyone skilled in the art who read the specifications and found butyl rubber to be lacking in these characteristics would understandably turn to other rubber like materials which possessed them. Rubber materials of this kind, according to paragraph 16 of the Omholt affidavit, are multitudinous and available from anyone of numerous rubber suppliers. In his deposition, Omholt also suggested that the specified characteristics might be found in some plastics.

The object of R.S. § 4888, the forerunner of 35 U.S.C. § 112 (1952) (and for present purposes not substantially different from it), has been stated in Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 57, 59 S.Ct. 8, 12, 83 L.Ed. 34 (1938). There the Court said:

"The object of the statute is to require the patentee to describe his invention so that others may construct and use it after the expiration of the patent and 'to inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not.' Permutit Co. v. Graver Corporation, 284 U.S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163."

. At this stage of the case it is at least inferable that the specifications as they relate to the material to be used beneath the channels are consonant with these purposes.

Defendant next challenges the adequacy of the description of the fibreboard which the patent contemplates shall be used between the channels. This material is generally described as being "of equal or of lesser total compressibility and of predetermined shock absorbency and rebound characteristics" (column 1, lines 33–35), as compared to the material beneath the channels. The only specific discussion of the fibreboard is as follows:

> "For this purpose a fiberboard having a density in the range from 16 to 33 pounds per cubic foot and with impregnation with asphaltum of the order of 15% by weight is preferred. The density is varied to suit the particular problem, greater density being employed for floors for industrial installations and lesser density being employed for gymnasium floors." (column 3, lines 35–41).

Defendant asserts that the specified density of 16 to 33 pounds per cubic foot of the fibre floor board is largely inoperative for carrying out the invention, and points to Omholt's deposition to prove it. Omholt testified at deposition pages 388–389 that fibreboard having density from 33 down to 22 was not satisfactory and that about 16 was the only range which was satisfactory. However, at pages 353 and 354 Omholt testified that the lower part of the density range (16 to 33) was used for gymnasium floors, and that the upper part of the range was used for industrial installations, such as exhibition halls where trucks and other objects of similar weight might be placed upon the floor. When this testimony and that relied upon by defendant are read together, it is reasonable to construe the testimony singled-out by defendant as intended by Omholt to be limited to density satisfactory for gymnasium use, and not addressed to the question of density acceptable for indus-

trial purposes. The 916 patent is clear that it was intended to include a flooring construction useful for both purposes. (column 3, lines 35–41). Defendant's claim that no satisfactory floor could be built in accordance with the general teachings of the patent except with fibreboard having a range of about 16, and that no floor could be successfully built with fibreboard with ranges of 22 to 33, has not been established by the present record beyond the point of controversy.

The motion of defendant for summary judgment on the 916 patent will be denied.