**ETHYL CORPORATION, Plaintiff,**

v.

**BORDEN, INC., Defendant.**

**Civ. A. No. 3517.**

United States District Court
D. Delaware.

June 26, 1969.

# 1326

Nathan Bakalar and James M. Mulligan, Jr., Connolly, Bove & Lodge, Wilmington, Del., Donald L. Johnson, John F. Sieberth, and E. Donald Mays, Baton Rouge, La., of counsel, for plaintiff.

Murray M. Schwartz, Longobardi & Schwartz, Wilmington, Del., Ellsworth H. Mosher and Farrell Roy Werbow, Stevens, Davis, Miller & Mosher, Washington, D'. C., George P. Maskas, New York City, of counsel, for defendant.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is an action by plaintiff, Ethyl Corporation, against defendant, Borden, Inc., for a declaratory judgment that defendant's United States Patent 3,297,-155 is invalid, unenforceable, and not infringed. Defendant denies the essential allegations of plaintiff's complaint and counterclaims charging that two of plaintiff's products infringe the patent. Jurisdiction and venue are based on 28 U.S.C. §§ 1338, 1391(c), 2001, 2002. Both parties now move for summary judgment on two separate issues of infringement, plaintiff seeking judgment that one of the accused products does not infringe, defendant seeking judgment that the other accused product does infringe. Neither party seeks summary relief on the issues of validity and enforceability.

The patent in issue is a comparatively simple one which claims as its primary invention a device designed to facilitate the winding under pressure of thin, highly elastic film onto a tubular core.[1] One property of such film is its propensity to expand laterally, i. e., flatten out, under pressure. Thus, as the film is wound under tension onto a core, the pressure exerted by the winding process on the layers of film already wound causes lateral expansion of those layers of film. The pressure is greatest on the layers closest to the core so that the tendency to expand is greatest at the core and decreases with distance from the core.

Prior to the invention covered by defendant's patent, the standard practice was to wind film directly onto the core. However, when that is done the co-efficient of friction between the film and the core is great enough so that expansion of the film layers adjacent to the core is restricted. The effect of the restriction is to permit the layers of film a short distance from the core to expand further than and overlap those layers adjacent to the core. As a result of the overlap, when the film is unwound by its user to the point of the overlap, the edges catch or "hang up" and cause the film to tear, preventing full utilization of the film remaining on the roll.

The invention disclosed in defendant's patent is designed to prevent edge "hang

[1] An example of the film referred to is polyvinyl chloride (PVC), a transparent, sticky film used, for example, by grocery stores to wrap fresh meats for display. The tubular core upon which this type of film is wound is usually made of cardboard.

up," that is, to permit the winding of a uniformly tapered roll of film with no overlapping edges. It consists essentially of a "movable collar device" disposed between the core and the bottommost layer of the film.[2] The characteristics and function of the collar device are described in the patent specifications as follows:

"The collar is characterized as having a coefficient of friction between it and the core less than between it and the film. The coefficient of friction between the collar and the core should not be greater than the coefficient of friction between adjacent layers of the film near the core.

"This relationship of the coefficients of friction between the film, the collar, and the core provides a system wherein there is caused a preferential lateral movement of the collar over the core. The film is thereby carried with the collar and prevented from enveloping and bowing in the undermost layers." Patent, Col. 1, lines 53–63.

Accordingly, defendant claims in its patent:

"1. A roll of soft, elastic film comprising:

(1) a core;

(2) a plurality of convolutions of said film wound under tension onto said core; and

(3) a movable collar disposed between and substantially in circum-

ferential contact with said core and said film and being in axially slidable relation with said core covering at least one line of intersection between said core and said film.

\* \* \* \* \* \*

"3. The roll of claim 2 [3] wherein:

(1) said core comprises cardboard;

(2) said film comprises polyvinyl chloride; and

(3) said collar comprises polyethylene."

Defendant has accused two of plaintiff's products of infringement. The first product is a roll of polyvinyl chloride film on a cardboard core with a non-continuous collar device made of polyethylene;[4] the second product is a roll of polyvinyl chloride film on a cardboard core, the ends of which have been dipped in wax. Plaintiff seeks a declaration on summary judgment that its wax-dipped cores do not infringe; defendant seeks summary judgment that plaintiff's polyethylene-collared cores do infringe. Each party opposes the other's motion for summary judgment.

 The standard of law governing motions for summary judgment, see Rule 56(c), F.R.Civ.P., is the same in patent cases as it is in non-patent cases, so that the Court may grant summary judgment only in the event that no genuine issue of material fact exists. Because the subject matter of patent litiga-

2. The "movable collar device" generally consists of two separate collars, one located at each end of the core, so as to permit axial movement of the two collars in opposite directions. Reference is made in the patent to a continuous collar device covering the entire core; however, the Court is aware of no instance in which the continuous device has been used.

3. Claim 2 is identical to claim 1 except for the following language added to section 1–(3):
"\* \* \* the coefficient of friction between said core and said collar being:
(a) less than the coefficient of friction between said film and said collar; and

(b) not greater than the coefficient of friction between adjacent layers of said film near the core."
In view of the patent specifications at Col. 1, lines 53–63, cited above, it is difficult to see any distinction between claims 1 and 2. However, defendant alleges no infringement of claim 2 by plaintiff and no further consideration will be given claim 2.

4. All parties agree that plaintiff no longer manufactures this product; however, answers to interrogatories reveal that plaintiff still has a stock of the product which it continues to market.

tion tends to be complex and difficult to understand without expert advice, it is the rare patent suit where there is no triable issue of material fact. However, where the substance of a patent and the structure and functioning of accused devices are readily comprehensible by the Court without the need of expert testimony or other extrinsic evidence, the Court should not be reluctant to grant summary judgment if the merits of the suit warrant it. See Methode Electronics, Inc. v. Elco Corp., 385 F.2d 138, 140 (3d Cir. 1967); Steigleder v. Eberhard Faber Pencil Co., 176 F.2d 604 (1st Cir. 1949); Powerlock Floors, Inc. v. Robbins Flooring Company, 280 F. Supp. 627, 630 (D.Del.1968); Montmarquet v. Johnson & Johnson, 82 F. Supp. 469, 474, 475 (D.N.J.1949).

■ After careful and thorough review of the record in this action, the Court is of the opinion that the patent in suit and the accused products are readily comprehensible without any expert guidance and that no genuine issue of material fact is before the Court on the question of infringement.[5] Accordingly, the questions of whether plaintiff's wax-dipped cores and polyethylene-collared cores infringe defendant's patent are questions of law which the Court may decide on summary judgment.

Turning first to the question of whether plaintiff's wax-dipped cores infringe, the essential issue is whether a cardboard core which is coated on each end with wax[6] constitutes a core with "a movable collar * * * being in axially slidable relation to said core." Plaintiff contends that its wax coating is by definition not a movable collar axially slidable on the core since the wax is clearly and firmly bonded to the core and incapable of being moved along the core. While plaintiff admits that its wax-dipped core produces the same result as defendant's collar device, plaintiff argues that it does so by the principle of lubrication and not the principle of the slidable collar.[7] Defendant argues, on the other hand, that the term "movable collar * * * axially slidable in relation to the core" encompasses the use of wax and point to the paragraph in its patent specifications stating:

> "The collar device must be selected for each particular system used, however, polyethylene, *wax*, soap, water, oil, metals, aluminum foil, nylon, Mylar, Teflon, polypropylene, styrene and the like may be used." Patent, Col. 3, lines 1–4. (emphasis added)

After close examination of the sample cores in evidence, the patent, and the file wrapper history of the patent, the Court is convinced that plaintiff's product consists of a core with a coating of firmly bonded wax which functions solely as a lubricant and that defendant's patent does not cover the use of a bonded lubricant such as wax.[8] Instead, the patent covers only a device or collar which moves or slides along—and is not bonded

5. The Court is well aware that, on the issue of whether plaintiff's wax-dipped cores infringe, the parties have presented by affidavit conflicting testimony of qualified experts. The mere presence of conflicting affidavits, however, does not prevent the Court from concluding, as it does here, that no genuine issue of material fact exists. See Belanger & Sons, Inc. v. Brisk Waterproofing Co., 116 F.Supp. 127, 129 (D.Mass.1953).

6. The cores are coated by dipping each end into molten wax and letting the wax impregnate and harden onto the surface of the cardboard core.

7. In terms of the accused product, "principle of lubrication" refers to the use

of a substance (e. g. wax) which acts to reduce friction between the film and the core and permits the film to slide across the core; "principle of the slidable collar" refers to the use of a device (collar) placed between the film and the core which does not permit the film to slide but instead slides itself and carries the film across the core with it.

8. The Court's conclusion that defendant's patent specifically does not cover the use of a bonded lubricant such as wax is dispositive of defendant's contention that plaintiff's wax-dipped core infringes the patent because it is "equivalent to" defendant's axially slidable collar device.

to—the core and which functions by actually transporting or carrying the film along the core.

■ The Court's conclusion is amply supported by the file wrapper history of defendant's patent which shows that the patent application was rejected until the words "and being in axially slidable relation with said core" were added for the reason that non-slidable collar devices were already covered by another patent. In addition, the specifications of the patent show that the basic principle of defendant's movable collar device is that the collar moves along the core but that the film does not move along the collar —a principle directly contrary to the principle of lubrication utilized by plaintiff. See Patent, Col. 1, lines 53–63. It is true, as defendant asserts, that wax is mentioned as a collar device in the patent specifications. However, the law is clear that:

> " * * * patent claims, not the specifications of a patent, measure the invention * * * and while a specification may be referred to to limit a patent claim it cannot be available to expand it." Schmidinger v. Welsh, 383 F.2d 455, 460 (3d Cir. 1967).

See also McClain v. Ortmayer, 141 U.S. 419, 423–424, 12 S.Ct. 76, 35 L.Ed. 800 (1891); Darsyn Laboratories v. Lenox Laboratories, 120 F.Supp. 42, 49–50 (D.N.J.1954). In the Court's estimation, the specification mentioning wax expands the claim [9] and must be disregarded.

■ Accordingly, it is the Court's conclusion that plaintiff's wax-dipped cores do not, as a matter of law, infringe defendant's patent and plaintiff's motion for summary judgment is granted.

Turning next to the question of whether plaintiff's polyethylene-collared cores infringe, there is no question that Claim 3 (as well as Claim 1) of defend-ant's patent covers this product. Indeed, the record is clear that plaintiff "borrowed" the idea of using slidable polyethylene sleeves on each end of a cardboard core from one of defendant's products covered by the patent in suit. See, e. g., Andrew Deposition Exhibit Nos. 58 (Hammond letter of May 28, 1968) and 31 (Blair "Special Report" of November 4, 1966); Verity Deposition, pp. 9–10. An examination of the sample core in evidence indicates clearly the use of a device well within the simple terms of defendant's patent.

Plaintiff, however, opposes summary judgment as to this product on two grounds. Plaintiff argues first that, because it has not yet commenced discovery on this particular question of infringement, it is in no position to know whether a genuine issue of material fact exists and cannot adequately counter defendant's motion. While the Court might, in ordinary circumstances, give credence to plaintiff's argument, in the circumstances of this case where infringement is clear from a reading of the patent and a look at the accused product, there is no chance that plaintiff's discovery will produce evidence sufficient to alter the Court's conclusion. See Belanger v. Brisk Waterproofing Co., supra 116 F.Supp. at 129.

■ Plaintiff's second argument is that, where the Court is faced with a substantial challenge to the validity of the patent in suit, the validity issue should be determined prior to any infringement issue since there can be no infringement of an invalid patent. Hence, the Court should deny defendant's motion pending trial of the validity question. Plaintiff's argument loses strength by virtue of the fact that plaintiff itself has asked this Court to decide an infringement question prior to a determination of validity. In addition, where, as here, resolution of an infringement issue will effectively narrow the

---

9. To the extent that wax could be premolded into a collar and placed over the core in a manner which would permit movement of the wax along the core, the wax collar would most likely be covered by defendant's patent. No such device is present here, however.

issues without unreasonably delaying the progress of the litigation, the Court is not persuaded that according priority to validity determinations is necessary. See Belanger v. Brisk Waterproofing Co., supra at 130.

For these several reasons, the Court is of the opinion that plaintiff's polyethylene-collared cores infringe defendant's patent and that defendant's motion for summary judgment should be granted.

Submit order in accordance herewith.