**H. BRINTON CO. et al. v. MISHCON.**

**No. 70.**

Circuit Court of Appeals, Second Circuit.

Dec. 6, 1937.

Morris Kirschstein, of New York City, for appellants.

Emanuel R. Posnack, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiffs have appealed from a final decree of the District Court for the Eastern District of New York dismissing the complaint in a suit on two patents upon the ground that infringement of neither patent was proved.

The two patents in suit, No. 1,989,617, granted to Harry S. Horrocks January 29, 1935, on an application filed July 6, 1932, and No. 1,970,238, granted to Raymond Kretser on an application filed December 26, 1933, cover attachments for circular knitting machines. The H. Brinton Company is the assignee of the Horrocks patent and the exclusive licensee of the Kretser. Both attachments are designed for use in knitting machines using needles which are all alike.

The Horrocks Patent.

The Horrocks patent relates to a construction by which the identical needles in the cylinder are selectively raised and lowered in such a manner as to make what is known as inlay knitted fabric. Such fabric was not itself new, but had before been made on circular knitting machines equipped with needles having butts of varying lengths and on rib machines, though the fabric of the latter was quite different. The limitations inherent in the use of needles having butts of different lengths made it impossible to change the inlay patterns except by varying the width of the strips which were always vertical. Even this required placing the needles in new positions, which took time and care. The Horrocks patent, however, disclosed a way to inlay a design in other directions than vertical and to make more complicated patterns than formerly.

Before going further, it is necessary to explain the action of the old circular open top knitting machine briefly. The patents on that having expired, it is, of course, free to all. Needles are placed in a cylinder having a cam ring fitted with the needed cams for moving the needles up and down as desired. This is done either by having the cylinder revolve while the cam ring upon which the needle butts act is stationary or by having the cylinder remain at rest while the cam ring revolves. The part of

a needle above the butt is called the shank which ends in a latched hook. Being here concerned only with identical needle machines, we will assume that all the needles in the cylinder are exactly alike. The yarn is fed to the machine at a predetermined level, and relative to the yarn feed level the needles are made by cam action to assume three distinctive positions in knitting. It is convenient to take as the first what is called the welt position. In that, a needle has dropped down farthest away from the yarn feed, and in doing so has knitted off, making itself ready to knit another loop. From there it is pushed up. When it has gone up far enough to take yarn again, but not far enough to have the latch cleared by the strand of yarn still in the loop, it is said to be in tuck position. If brought down from there without going higher, yarn would be taken, but no knitting would be done, since there could be no casting off. But if, as happens in knitting, the needle continues to rise above the tuck position, the latch is fully opened by the loop in the hook coming down below it, so that, as the needle is brought down to tuck position, it takes yarn which, as the needle still drops to welt position, is drawn through the old loop and that is cast off, completing the knitting operation. As that occurs over and over again, the fabric is knitted in its simplest or plain form. The needle action is supplemented by thin flat metal pieces called sinkers which move in and out horizontally between the needles to hold the fabric down with reference to the needles, but that action need not for present purposes be further explained.

Inlay fabric has strands of yarn, usually and for better contrast always, of another color which is not itself knitted but is laid into the knitted fabric in such a way that wanted designs can be made with a wide variety of materials, even with those whose tensile strength, irregular diameter, or composition make them unsuitable for knitting. Thus among other materials cellophane may be used for inlays and may be inlaid in loops or not as wanted just as anything suitable may be inlaid. Whatever is inlaid may be pulled out without spoiling the knitted part of the fabric, since it is not at any point knitted in.

When inlay fabric is to be made, the knitting needles are so moved up and down that part of them are raised no higher than the tuck position where they take the inlay yarn from a separate feed and bring it down to sinker level. Other needles, and

the inlay needles at later stages if desired, move up above the tuck to latch-clearing or knitting position and when they come down take knitting yarn from its feed which is knitted about the inlay yarn. Before Horrocks, the needles that did the inlay had short butts while those which knitted had longer ones and thus the cam acting, the same at the butts, varied the height to which the tops of the needles would go by the amount the butt lengths varied.

For many years before Horrocks, so-called design, or pattern, wheels had been in use in circular knitting machines. They were mounted at an oblique angle touching the needle cylinder in such a way that radial slots in the design wheel would engage the needle butts somewhat as cog wheels engage as they turn in contact with each other. These radial slots were either open, in which event the needle butt would go down into the slot and not be moved up, or would be filled more or less by a jack, in which event the needle entering such a slot would be moved up as high as the jack had been set to move it. So were knitted stitches made to vary in the prior art as wanted within the variation limits of the pattern wheels. Horrock's attachment for the old circular knitting machine used a design wheel to select the needles that would be pushed up only to the tuck position where they would take inlay yarn and not knit it. What he really did was to make needle selectivity dependent in this respect not upon cams acting upon needles of differing butt lengths as before but to make it dependent upon the arrangement of the jacks in the pattern wheel slots acting upon needles always the same. This gave the advantage of greater scope of variation with its resultant increase in the variety of fabric designs that could be made.

He used an approach cam which raised the needles in the cylinder to the level which would permit them to be acted upon selectively by the pattern wheel, having discovered that the changes in the old construction required were the raising of the needle cylinder, which also raised the sinker level, and the placing of the pattern wheel at an angle of 40 degrees. He testified: "With the old wheel we could not produce the inlay fabric merely by raising the cylinder and without the necessary changes to the section resulting from raising the cylinder, and one of the essential features of my invention is changing the angle of the pattern wheel, and unless I changed the angle of

the pattern wheel from the old angle, I could not produce the inlay cloth in accordance with my invention. The angle that I found was 40 degrees."

The statement of what Horrocks did to the old type knitting machine given in his own language sets the bounds of whatever invention he made. It is said truly that his patent specifications are very meager and did not disclose the needed 40 degree angle of the pattern wheel. He described his construction in terms of what he said it would accomplish, leaning heavily upon references to drawings for amplification. It is somewhat doubtful whether his disclosure is sufficient to give his patent validity. See Permutit Co. v. Graver Corp., 284 U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163. But we do not find it necessary in this case to decide that. Nor do we undertake to decide whether Lombardi's patent, No. 1,426,576, which was granted September 17, 1929, on an application filed June 15, 1925, anticipates. That did, indeed, show pattern wheel selection of identical needles which at times did not knit but at some point or other every strand was knitted, leaving none inlaid entirely. Perhaps the change to what Horrocks did was not very great, but Lombardi's disclosure was considered in the Patent Office and the Horrock's patent was issued over it. We prefer to let that suffice for the present, as we agree with the trial court that infringement was not shown. On this point, of course, we confine ourselves to the patent structure and disregard any modifications that were embodied in the plaintiff's commercial machine.

The five claims in suit are:

"1. In a knitting machine, a series of identical independent needles, means at a point along the series for supplying a main yarn means at a relatively remote point for supplying a yarn to be inlaid in the fabric without forming knitted stiches, means including a rotary selector wheel acting directly on the needles for operating needles selectively to draw loops of the yarn to be inlaid, and means for subsequently causing all the needles to knit stitches of the main yarn, thereby forming tied-in floats of the inlaid unknitted yarn.

"2. In a knitting machine, a series of identical independent needles, means at a point along the series for supplying a main yarn, means at a relatively remote point for supplying a yarn to be inlaid in the fabric without forming knitted stitches,

means including a rotary selector wheel acting directly on the needles for operating needles to draw loops of the yarn to be inlaid, and means for subsequently causing the needles to knit a course of stitches of the main yarn, thereby forming tied-in floats of the inlaid unknitted yarn.

"3. In a circular independent latch needle multiple feed knitting machine, a set of identical needles, a rotary selector wheel at a feed acting directly on the needles to raise needles selectively during the knitting of a course and to raise a different selection of needles during the knitting of another course to a yarn-taking level below the latch-clearing level whereby the raised needles take a strand at said feed, a cam for lowering the needles so raised to an idle level, a cam for elevating all needles to clear their latches and to take yarn at the next feed, and a stitch cam for causing all the needles to knit at said feed, whereby the strand taken at the first-named feed is incorporated into the fabric without formation of knitted stitches thereof in any part of the fabric.

"4. In a circular independent needle knitting machine having a series of identical needles the combination of means for feeding a strand to be knitted, an auxiliary feed remote from such means, means for selecting needles selectively at said auxiliary feed during the knitting of a course to draw a strand into a position where it will be at the rear side of the non-selected needles when said non-selected needles are raised and for selecting other needles during another course for the same purpose, and means at a subsequent feed for actuating the needles to cause them to knit a course of stitches whereby the first-named strand is incorporated into the fabric in unknitted relation said first-named strand remaining so unknitted throughout its length.

"5. In a circular independent needle knitting machine having a series of needles, the combination of means for feeding a strand to be knitted, an auxiliary strand feeding station remote from such means, means for actuating needles selectively at said auxiliary station including pattern means controlling the needles individually to cause selected needles to be elevated during the knitting of a course and to cause a different selection of needles to be elevated during the knitting of another course and means for lowering said needles to a point short of the casting-off level where-

by said needles draw a strand into a position where it will be behind the non-selected needles when said non-selected needles are raised, and means at a subsequent strand feeding station for actuating both selected and non-selected needles to cause them to knit a course of stitches, whereby the strand supplied at said auxiliary feeding station is incorporated into the fabric in unknitted relation said strand remaining so unknitted throughout its length."

■ All are dependent upon means for selecting the needles that merely inlay at what may be called the first stage through the use of the changes in the old type machine which Horrocks disclosed. One essential to patentability is that what he disclosed should be useful. 35 U.S.C.A. § 31. Certainly it would have to work in order to be useful, and Horrocks himself testified without contradiction that his construction was only workable when the changes were made in the old machine required by the raising of the needle cylinder and the placing of the selector wheel at an angle of 40 degrees instead of at the old angle of 30 degrees. So the greatest breadth which can be given the claims, on the assumption that they are valid, is one limited to changes incident upon raising the needle cylinder and the use of a pattern wheel at a 40-degree angle.

■ Neither feature is found in the accused machine manufactured by the defendant. On the contrary, the defendant does not raise the old needle cylinder at all, and so, of course, leaves the sinker level and other related positions as before. That is to say, he leaves those parts of the machine so that knitting may be performed with them if desired. Then he introduces a forked bearing piece for his design, or selector, wheel, which wheel is not placed at an angle of 40 degrees but at a lesser one; a 30 or 35 degree angle being suitable. The wheel may be mounted either on the upper fork of the bearing piece, at which point it is an aid to the knitting function of the needle cylinder and the coacting parts of the machine or it may be placed on the lower fork where it will cause needles in the cylinder to be selected for inlay work only and it may be changed from one mounting to the other. Thus it appears that Horrocks and the defendant hit upon two different ways for modifying the old type circular open end knitting machine to make it inlay. While the defendant was actually making

his machine before Horrocks applied for his patent, it has apparently been taken for granted that the date of invention was before the defendant's construction. The fact of manufacture prior to the filing of the patent application, however, precludes any idea that anything in the patent was an aid to the defendant. And, if it does not support, it certainly does not weaken, the conclusion that the defendant's construction is not the equivalent of the plaintiffs.

As we fail to find infringement established by the proof, the decree in respect to the Horrock's patent is affirmed.

### The Kretser Patent.

■ This patent relates to a different operation in such a knitting machine as has already been considered. Some difficulty had been experienced in producing multicolored designs on circular knitting machines using · identical needles due to the fact that sometimes the unselected needles in design knitting would jump up to where they would clear their latches and take yarn. When this occurred the design was blurred, especially when more than two colors were used.

As Kretser said in his specifications:

"An object of this invention is to provide in a machine of the character described, a highly improved separating cam for lowering the needles which have not been lifted by the pattern wheel to a welting position and prevent these needles from engaging the thread, the construction of the cam being such, furthermore, that should a butt of a needle strike the point or nose of the cam directly, the separating cam will move outward and away from the cylinder to permit said needle butt to by-pass the separating cam, thus preventing breakage or bending of said needle." To do that he installed a retractible cam between the pattern wheel and one of the stitch cams so that it would lower to the welt position all the needles not selected and raised by the pattern wheel. Retractible cams were old in knitting machines. See Howie's patent, No. 1,590,295, granted June 29, 1926, and patent No. 1,105,735, granted to Wildman and Ballard August 4, 1914. Whatever there is new in what Kretser did lies in the fact that his retractible cam was placed between a stitch cam and pattern wheel; all three mounted on one section; and the retractible cam so positioned that its own

particular movement was either toward or away from the needle cylinder. It was a rather obvious thing to do, and perhaps it did not amount to invention anyway, but here again we find it unnecessary to deal with validity.

What is called a section by Kretser is a distinct part of such a knitting machine. As Kretser used his retractible cam, it could not be taken out except by removing the whole section. He deliberately incorporated his retractible cam in the section itself, apparently to gain an advantage in line with his declaration in his specifications that, "A still further object of this invention is to provide a highly compact, strong and rugged device of the character described, which shall comprise comparatively few and simple parts, be relatively inexpensive to manufacture, easy to install on present knitting machines, and which shall nevertheless be smooth in operation and practical and efficient to a high degree."

So his construction was made to take the form of a combination which included the retractible cam; the stitch cam; and the pattern wheel all mounted on the same section. And each of the claims in suit which are Nos. 1, 5, and 7 are tied to a "cam mounted on said section for lowering needles not raised by the pattern wheel," to use language found in claim 1 and repeated in substance in the others.

The defendant does not make use of this construction. He used the old retractible cam to keep his unselected needles down in place, but does not combine that with the section. The section itself is a separate part of the machine which is mounted on the cam ring removably. The defendant's retractible cam is placed on the cam ring where it may be adjusted without removing the section and where, a matter decisive as to infringement, it is not mounted on the section and so not covered by the claims in suit. The patented structure is so close to the prior art as disclosed by the two patents above mentioned that validity requires limitation to the arrangement disclosed and claimed too strictly to cover the defendant's cam not incorporated in the section at all. Boyd v. Janesville Hay Tool Co., 158 U.S. 260, 15 S.Ct. 837, 39 L.Ed. 973; Bridge, Beach & Co. v. Excelsior Mfg. Co., 105 U.S. 618, 26 L.Ed. 1190.

Decree affirmed.