**ETHYL CORPORATION**

v.

**BORDEN, INC., Appellant.**

**No. 18219.**

United States Court of Appeals, Third Circuit.

Argued April 20, 1970.

Decided June 5, 1970.

Farrell R. Werbow, Stevens, Davis, Miller & Mosher, Arlington, Va., (Ellsworth H. Mosher, Washington, D. C., Murray N. Schwartz, Longobardi & Schwartz, Wilmington, Del., George P. Maskas, New York City, on the brief) for appellant.

James M. Mulligan, Jr., Connolly, Bove & Lodge, Wilmington, Del. (Nathan Bakalar, Wilmington, Del., Donald L. Johnson, John F. Sieberth, E. Donald Mays, Baton Rouge, La., on the brief), for appellee.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Plaintiff-appellee, Ethyl Corporation (Ethyl), filed its complaint in the district court charging that United States Patent No. 3,297,155 owned by defendant-appellant, The Borden Company (Borden), was invalid, unenforceable, and not infringed. Borden denied Ethyl's charges and counterclaimed, charging

that two Ethyl products infringe the patent. Both parties moved for summary judgment on the infringement issues. Neither party sought summary relief on the issues of validity and enforcement. The district court granted a summary judgment that one of Ethyl's products, called hereinafter the polyethylene collar device, did infringe Borden's patent. No appeal has been taken from that decision. It also granted summary judgment that Ethyl's other product, called hereinafter the wax collar device, did not infringe. This latter summary judgment was certified as a final and appealable judgment in Ethyl's favor, Fed.R.Civ. P. 54(b), and Borden appealed.

Flexible film such as plasticized polyvinyl chloride, polyvinylidene chloride, low slip polypropylene, rubber hydrochloride, and the like, used as packaging materials, are usually sold in rolls wound on tubular cores under tension and are unwound for use. The physical properties of such films make them subject to dimensional changes over time, known as cold flow, or creep. When such films are wound on a core under tension, the tension causes a radial pressure, perpendicular to the axis of the core, which radial pressure causes cold flow in the successively underlying layers of the film. Because of the tension in winding, the cold flow can only occur in the lateral dimension of the film, parallel to the axis of the core. Since the radial pressure is greatest on those layers of film closest to the core and least on those layers most distant therefrom, the greatest lateral cold flow tends to occur in those layers of film closest to the core. However, on the innermost layers of film the coefficient of friction between the film and the core is greater than between succeeding adjacent layers of film, and these innermost layers are restricted in their lateral flow. The restriction in lateral dimensional change in the innermost layers of film permits the succeeding adjacent layers to overlap these. As tension increases during winding, the lower layers envelop the next succeeding layers. When the film is unwound the engagement at the edges (edge hang up) between successive layers close to the core causes tearing, and wasted film. Patent No. 3,297,155 discloses an invention to facilitate the complete unwinding of the film without such tearing and waste.

The parties do not dispute that the key to the elimination of the tearing caused by edge hang up is some means whereby the innermost layers of film will not be impeded in their lateral cold flow parallel to the axis of the core by friction between those layers of film and the core. Borden's inventors developed such a means, which they disclosed in the application for patent No. 3,297,155. Claim 1 of that patent covers:

1. A roll of soft, elastic film comprising:

(1) a core;

(2) a plurality of convolutions of said film wound under tension onto said core; and

(3) a movable collar disposed between and substantially in circumferential contact with said core and said film and being in axially slidable relation with said core covering at least one line of intersection between said core and said film.

Borden, before the patent was issued, marketed a roll of film wound on a core on which a polyethylene collar was disposed between the core and the film. The device was so successful in overcoming edge hang up that Ethyl copied it. The Ethyl copies are the subject matter of the summary judgment of infringement granted to Borden, which judgement is not before us.

When the Borden patent issued, Ethyl sought a substitute for the polyethylene collar. It didn't have to look too far, for the specifications of the Borden patent state:

The collar device must be selected for each particular system used, however, polyethylene, *wax*, soap, water, oil, metals, aluminum foil, nylon, Mylar, Teflon, polypropylene, styrene and the

like may be used. Patent, Col. 3, lines 1–4. (Italics added)

Ethyl chose wax. It dipped the ends of its cores into molten wax, letting the wax impregnate the cardboard cores and harden on the surface of each end, and wound the film so that the lines of intersection between the film and the core occurred over the hardened wax. This was found to accomplish the same result, the elimination of edge hang up.

Ethyl contends, however, that while its wax dipped cores accomplished the same result, the result was not accomplished by the same means and in the same manner as in Borden's Claim 1. The affidavit of its expert (Hammond) asserts that the means whereby the innermost layers of film are permitted to cold flow laterally parallel to the axis of the core is by lubrication furnished by the wax. He asserted, moreover, that while the film moves laterally, no part of the wax collar moves laterally. Hammond explains the existence of a ridge or edge of wax, which appears on the collar upon examination after unwinding the film, as having been caused by compaction of the wax beneath the film caused by radial pressures during winding. Thus, it is argued, the wax core is not the equivalent of Claim 1, and Claim 1 may not be enlarged by reference to the specifications.

The affidavit of Borden's expert (Reynolds) conflicts with that of Hammond. He examined the same physical exhibits referred to by Hammond and he concludes:

5. My examination of Exhibit C described in paragraph 6 of Mr. Hammond's Affidavit revealed that the wax at each end was not still in its original location and that the wax had been moved outwardly by the edgewise expansion of the innermost turns of film. Further, the wax covered by the turn is not more compacted than the uncovered portions but rather wax has slid axially from the area covered by the turns of film outwardly.

6. My examination of Exhibit D accompanying the Hammond Affidavit revealed that although the margin referred to by Mr. Hammond has a fairly sharp boundary, wax in the critical area underneath and immediately adjacent the innermost film turns had slid axially in relation to the core. (47a)

The exhibits referred to were examined by the district court and by us.

The district court acknowledged that it was faced with conflicting affidavits by qualified experts, but it concluded, nonetheless, that no genuine issue of material fact barred summary judgment. It stated:

After close examination of the sample cores in evidence, the patent, and the file wrapper history of the patent, the Court is convinced that plaintiff's product consists of a core with a coating of firmly bonded wax which functions solely as a lubricant and that defendant's patent does not cover the use of a bonded lubricant such as wax. Instead, the patent covers only a device or collar which moves or slides along—and is not bonded to—the core and which functions by actually transporting or carrying the film along the core.

Ethyl Corporation v. Borden, Inc., 300 F.Supp. 1325, 1328–1329 (D.Del.1969) (footnote omitted).

This, it seems to us, was an adoption of the description of the physical phenomenon by one expert, Hammond, and a rejection of that by the other expert, Reynolds. While we can envisage instances where the exhibits are so simple and clear as to make this course appropriate on a motion for summary judgment, our own examination of the same exhibits convinces us that this was not such an instance.

There is no way that we can tell, by looking at the exhibits, whether or not the evident ridge in the wax collar was formed as a result of compaction (Hammond) or by movement of the underlying wax laterally (Reynolds). If, as Hammond contends, compaction occurs as

a result of "high radial pressures of the film on the core as a result of the winding under tension" (19a), it would seem that the resulting sharply defined margin, if immovable as he suggests, would prevent the lateral cold flow of the innermost film layers which is the acknowledged object of the wax collar, and which admittedly occurs. That margin appears to the eye and to touch, as an extruded ridge rather than merely a sharply defined margin. We cannot say that by examining the exhibits a court could accept the Hammond contention that "no wax has been moved outwardly" (19a), and that the wax functions solely as a lubricant.

Moreover, the "solely as a lubricant" conclusion cannot be dispositive, for although the word lubricant does not appear in the Claim, the function which the claimed combination performs is to cause the innermost layers of film to slip easily in a lateral direction by eliminating friction between the core and the film. It cannot be said that the sliding polyethylene collar does not thereby "lubricate."

The district court finds support for its conclusion in the file wrapper history where a citation of the Csutor Patent, No. 2,953,313, caused Claim 1, paragraph 3 to be amended by the addition of the words "and being in axially slidable relation with said core." Csutor discloses a means for preventing outward bulging of Scotch or other tape by spokes fixed to the core. The object of the fixed spoke is to impede rather than to facilitate the lateral cold flow movement of the film. Addition of the words "in axially slidable relation with said core" must be understood in this context. If the ridge or margin which appears on Ethyl's wax collar is in fact immovable, as Hammond asserts, then this distinction from Csutor is significant and file wrapper estoppel may indeed apply. If, as a superficial examination of the exhibits suggests,

the ridge is a lateral extrusion of wax which as it moves facilitates the lateral movement of the film, the words "in axially slidable relationship" would seem to describe that phenomenon, at least in a generic manner.

Nor can complete reliance be placed on the distinction between a "bonded" collar and a "slidable" collar. If the wax collar functions as Reynolds contends, it is partly bonded and partly slidable. Some molecules of wax adhere to the core and others move laterally. The bonding feature does not preclude a finding that the wax collar does the same work as an unbonded polyethylene collar in substantially the same way and accomplishes the same result. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 (1929).[1]

We conclude, therefore, that there are substantial factual issues as to infringement, by Ethyl's use of a wax collar, of Borden's patent No. 3,297,155. In reaching this conclusion, we are mindful that the claims of the Borden patent cannot be enlarged by reference to the specifications. Schmidinger v. Welsh, 383 F.2d 455, 460 (3 Cir. 1967). Neither can the specifications, which here disclose the very means by which Ethyl accomplished the same functional result, be entirely disregarded, for " * * * it is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention * * *." United States v. Adams, 383 U.S. 39, 49, 86 S.Ct. 708, 713, 15 L.Ed.2d 572 (1966). Nor do we suggest that there should be any greater reluctance on the part of a district court to grant a summary judgment on a patent infringement issue than on any other, for such is not the law. Steigleder v. Eberhard Faber Pencil Co., 176 F.2d 604, 605 (1 Cir. 1949); Smith v. General Foundry Machine Co., 174 F.2d

1. In Standard Industries, Inc. v. Tigrett Industries, Inc., 397 U.S. 586, 90 S.Ct. 1310, 25 L.Ed.2d 590 (1970), the Supreme Court had before it a case presenting the opportunity to reconsider *Graver Tank* and *Sanitary Refrigerator Co*. It affirmed by an equally divided court without opinion on that issue.

147 (4 Cir. 1949) ; cf. Park-In-Theatres, Inc. v. Perkins, 190 F.2d 137, 142 (9 Cir. 1951) (opinion by Hastie, J., issue of validity) ; Allen v. Radio Corporation of America, 47 F.Supp. 244 (D.Del.1942) (issue of validity). Here, however, the district court resolved disputed and relevant factual issues on conflicting affidavits of qualified experts, and that is not permitted. E.g. Rains v. Cascade Industries, Inc., 402 F.2d 241 (3 Cir. 1968) ; Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 356 F.2d 442 (7 Cir. 1966), cert. denied, 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966) ; Yardley Created Products Co. v. Clopay Corp., 324 F.2d 932 (7 Cir. 1963).

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.