FEDERAL LABORATORIES, INC.

v.

BARRINGER RESEARCH LIMITED
and Intex, Inc.

Appeal of Barringer Research Ltd.

No. 82–5206.

United States Court of Appeals,
Third Circuit.

Argued Oct. 28, 1982.

Decided Dec. 29, 1982.

Richard G. Lione, Joel W. Benson (argued), Hume, Clement, Brinks, Willian & Olds, Ltd., Chicago, Ill., John M. Webb, Webb, Burden, Robinson & Webb, P.A., Pittsburgh, Pa., for appellant.

Stanley J. Price, Jr. (argued), Price & Adams, Ltd., Pittsburgh, Pa., for appellee.

Before ADAMS and GARTH, Circuit Judges; and GERRY,* District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In this appeal, Barringer Research Ltd. (BRL) challenges the grant of summary judgment in favor of Federal Laboratories, Inc. (Federal), in a patent case, on the ground that the district court, 524 F.Supp. 755, impermissibly resolved disputed issues of material fact. Because we agree that the trial court did err by resolving such issues, we reverse and remand for further proceedings consistent with this opinion.

### I.

This dispute concerns the use of pulsed field technology in metal proximity detectors. Metal proximity detectors are devices used primarily to screen for weapons at airports, courthouses, prisons and other sensitive locations. They operate by generating a primary electromagnetic field. When a metal object passes through that field a secondary field is created around the object, causing eddy currents to flow on it. A receiver located in the detector unit senses transients produced by the decaying eddy currents, and then relays information to a control element, which determines whether the transients were created by an object of sufficient mass to be of concern to those policing the area.

These metal proximity detectors employ either continuous or pulsed field radiation. The pulsed field units operate by generating "electric current pulses of predetermined width with predetermined intervals between successive pulses," App. at T–

* Hon. John F. Gerry, United States District Court for the District of New Jersey, sitting by designation.

16422, and then sensing "the secondary field transients ... during periods in which the primary electromagnetic field is either absent or is not time varying." App. at F–1. In contrast, the continuous field or continuous radiation units generate an uninterrupted electromagnetic field. The receiver then detects changes in the primary field produced by the decaying eddy currents.

On September 27, 1965, Anthony Barringer, Joseph Pronovost and Kenneth Turner (the Barringer Group) filed an application for a patent for a proximity detector employing pulsed field technology. The patent, # 3,430,221 ('221), was issued three and one-half years later on February 25, 1969, and assigned by the Barringer Group to BRL. The Barringer Group claimed that the pulsed field system had significant advantages over continuous field detectors. Specifically, they insisted it was more sensitive, more stable and, because it utilized relatively simple circuitry, more economical. App. at F–2. BRL granted a license to the Intex Corporation to use the technology disclosed in patent '221 in walk-through proximity detectors, which Intex introduced in 1975.

Federal manufactures a competing line of metal proximity detectors. All of the units made by Federal prior to 1975 used continuous field technology. Shortly after the introduction of the Intex walk-through detector, Federal developed and began marketing its own pulsed field device. It denies that this detector infringes patent '221, but argues that it is unnecessary to reach the infringement issue inasmuch as the patent is invalid.

Federal brought an action in district court for the Western District of Pennsylvania under 28 U.S.C. § 2201 for a declaratory judgment that patent '221 was invalid, because obvious within the meaning of 35 U.S.C. § 103. BRL counterclaimed alleging infringement of the patent-in-suit and demanded a jury trial. On May 22, 1981, Federal filed a motion pursuant to Fed.R. Civ.P. 56 for summary judgment. BRL op-posed the motion on the ground that the case presented genuine issues of material fact, not resolvable on a motion for summary judgment, and proffered a deposition and affidavit in support of its position. Fed.R.Civ.P. 56(e). The trial court granted summary judgment in favor of Federal on October 26, 1981.

II.

■ Not all discoveries or inventions are patentable. The Constitution limits the authority of Congress to provide for the granting of patents to the promotion of "useful arts." Art. I, § 8, cl. 8; see Graham v. John Deere Co., 383 U.S. 1, 7–9, 86 S.Ct. 684, 688–89, 15 L.Ed.2d 545 (1966). In 1851, the Supreme Court held that not even all useful improvements were patentable. Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 267, 13 L.Ed. 683 (1851). It decided that those changes characterized as merely the work of an "ordinary mechanic" did not have "that degree of skill and ingenuity which constitute essential elements of every invention." Id. Congress clarified the Hotchkiss requirement[1] by enacting 35 U.S.C. § 103, which provides in relevant part:

A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Interpreting this section, the Supreme Court has developed a three-part test to decide whether an invention is sufficiently "non-obvious" to be patentable. "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." Graham v. Deere, 383 U.S. at 17, 86 S.Ct. at 693.

---

1. See R.M. Palmer Co. v. Luden's, Inc., 236 F.2d 496, 499–500 (3d Cir.1956).

According to Federal, the application of the pulsed field technique to a variety of detection problems was well understood at the time the Barringer Group applied for the patent-in-suit. Federal asserts that far from constituting an advance patent '221 merely applied existing technology in a situation that required less sophisticated engineering than that already in use. BRL counters that the alleged "prior art" cited by Federal is not analogous and that persons of ordinary skill in the relevant art would not have understood that pulsed field technology could be used successfully in proximity detectors.

### III.

The relevant prior art cited by Federal consists of two earlier Barringer patents, the Colani patent, and four scholarly-technical publications. The Barringer patents[2] disclose a system for detecting mineral deposits by means of "the pulse excitation of ore bodies." App. I–1. In this method, a transmitter on board an aircraft generates powerful pulsed signals which induce a characteristic, but relatively weak transient response in the ore body. A receiver towed behind the aircraft detects these signals, which are then analyzed to determine whether there is a commercially sufficient quantity of ore. App. at I, J. The Colani patent disclosed the use of pulse field systems to investigate relatively homogeneous material with "anomalous or varying electric conductivity."[3] The articles discuss the employment of the eddy-current method for measuring the resistivity of metals,[4] and for the non-destructive testing of metals[5] and metal coatings.[6]

Federal maintains that all of the elements disclosed in '221 as well as the use of pulse technology are contained in one or more of these prior publications. App. at B–49. In his deposition, Dr. Barringer admitted that these publications all dealt with electromagnetic fields to produce eddy currents, App. at O–8. He insisted however that the differences between "geophysical" systems and proximity detectors are so great that the technology could not be considered analogous, App. at O–8, O–9, O–11, P–2, and that the cited articles were neither relevant nor material to the patentability of the invention disclosed in '221. App. at P–2. Dr. Barringer also maintained that the existence "of a control means in the device of the patent in suit" constituted "an important distinction between it and geophysical devices that use pulse fields." App. at O–13. In granting Federal's motion for summary judgment, the district court characterized these differences as dramatic, but superficial, App. at D–4, discounting Dr. Barringer's expert opinion that is to the contrary. The district court made no mention of the declaration by Dr. Barringer that none of the prior art publications disclosed a control means.

The third *Graham v. Deere* criterion requires the court to determine the level of ordinary skill in the pertinent art. As pointed out in *Preuss v. General Electric Co.*, 392 F.2d 29, 32 (2d Cir.1968), *cert. denied* 393 U.S. 834, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968), this constitutes, when considered in conjunction with the first two criteria, a specialized reasonable-person test. It measures "the knowledge of a hypothetical person skilled in the art, who has thought about the subject matter of the patented invention in light of that art." *Flour City Architectural Metals v. Alpana Aluminum Products, Inc.*, 454 F.2d 98, 107–08 (8th Cir. 1972). Federal proffered no expert testimony by way of depositions or affidavits

2. Patent # 3,020,471 was granted to Dr. Barringer on February 6, 1962. Patent # 3,105,-934 was granted to Dr. Barringer on October 1, 1963 and reissued as RE 25,907 on November 16, 1965. App. at I, J.

3. Patent # 3,315,155 was granted to Claus Colani on April 18, 1967. App. at Q.

4. Bean, DeBlois and Nesbitt, Eddy-Current Method for Measuring the Resistivity of Metals, 30 J. Of App. Physics 1976 (1959); Stern,

Levy, Kagiwada and Rudnick, On the Measurement of Resistivity of Metal Bars by Eddy Current Decay, 2 App. Physics Letter 80 (1963).

5. Renken, A Through Transmission System Using Pulsed Eddy Current Fields, 18 Nondestructive Testing 234 (1960).

6. Waidelich, Coating Thickness Measurements Using Pulsed Eddy Currents, 10 Proc. of the Nat. Electronics Conf. 500 (1954).

regarding the level of ordinary skill in the art or the definition of the relevant art. Instead, it merely argued that the nature of the Barringer organization itself and the technical sophistication evident in the cited publications and the Colani patent indicated that skill levels in this field were very high. App. at B–50. In his deposition, Dr. Barringer disputed the pertinence of this material, stating that he did not regard geophysical detection and proximity detection as a single technical field. He asserted that "[t]hey are quite clearly formed into separate areas of marketing, separate areas of technology." App. at O–11. Despite these statements under oath, the district court accepted Federal's argument. App. at D–8.

As BRL noted in its brief, the district judge also appears to have misapplied the test of ordinary skill in the pertinent art. In support of his holding that a person of ordinary skill in the pertinent art would have been able to understand the relevance of the alleged prior art to the innovations disclosed in the patent, he noted that the present level of expertise and academic achievement of BRL's research personnel indicated that the level of skill in the industry was so high that "the use of eddy current technology to determine the presence of metal objects would have been obvious, in September 1965." App. at D–8. It is, at the very least, unclear why the high level of expertise of the patent holder is relevant to the question of ordinary skill in the art or how it is possible to infer from the number and capability of members of a professional staff in the late 1970s what the ordinary skill level had been in 1965.

## IV.

Summary judgment is appropriate only in that restricted group of cases where there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law.[7] C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2712 (1973 & Supp.1982). This Court recently emphasized the heavy burden of proof that must be carried by the party moving for summary judgment when it explained:

We have characterized summary judgment as "a drastic remedy," and have made clear "that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties." *Ness v. Marshall*, 660 F.2d 517 at 519 (3d Cir.1981) (quoting *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882, 884 (3d Cir.1974)). Moreover, "[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). "On review the appellate court is required to apply the same test the district court should have utilized initially." *Id.*

*Hollinger v. Wagner Min. Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981).

■ A court may not, therefore, resolve "disputed and relevant factual issues on conflicting affidavits of qualified experts," *Ethyl Corp. v. Borden, Inc.*, 427 F.2d 206, 210 (3d Cir.1970). Nor is it at liberty to disbelieve the good faith statements of experts contained in depositions or affidavits and presented by the non-moving party. *See Technitrol v. Control Data*, 550 F.2d 992, 996 (4th Cir.1977), *cert. denied* 434 U.S.

---

7. The Fourth Circuit has warned that summary judgment is "not ordinarily appropriate for the disposition of a patent case," and should therefore be employed with great caution. *Technitrol, Inc. v. Control Data Corp.*, 550 F.2d 992, 996 (4th Cir.1977) *cert. denied* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 79 (1977). The significance of patents is often difficult to understand "because the patent, in its nature, is difficult to understand." *Park-in-Theatres v. Perkins*, 190 F.2d 137, 142 (9th Cir.1951) (Hastie, J.). In determining whether to apply summary judgment, a court should therefore assure itself that "the structure and mode of operation of the accused device are such that they may be readily comprehended by the court ... without the need of technical explanation by the testimony of expert witnesses...." *Steigleder v. Eberhard Faber Pencil Co.*, 176 F.2d 604, 604–605 (1st Cir.1949). *But see Ethyl Corp. v. Borden, Inc.*, 427 F.2d 206, 209–210 (3d Cir.1970).

822, 98 S.Ct. 65, 54 L.Ed.2d 79 (1977). In this case, BRL submitted the deposition and affidavit of Dr. Barringer in opposition to Federal's motion for summary judgment. F.R.Civ.P. 56(e). There is no dispute that Dr. Barringer, who had been granted all but one of the patents discussed in this case, was an expert witness, although admittedly an interested party. He stated explicitly that the prior art cited by Federal was not analogous to that disclosed in the patent-in-suit, since it dealt with geophysical rather than proximity detectors, App. at O–11, and did not reveal a control means. App. at O–13. Dr. Barringer insisted that applications of the pulsed method to fields other than geophysical exploration, although described in the literature, "had not been commercially reduced to practice," App. at O–10, and concluded that a person of ordinary skill in the pertinent art would not have found the disclosures in patent '221 obvious. The district court impermissibly disregarded this testimony when it granted the motion for summary judgment.

### V.

Since Dr. Barringer's deposition and affidavit created genuine issues of material fact, such as those discussed above, the grant of summary judgment will be reversed and the case remanded for further proceedings consistent with this opinion.